IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WENDY G. LOGSTON,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 1:14-cv-01905-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Wendy Logston seeks judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Logston applied for Supplemental Security Income on December 17, 2009 and for Disability Insurance Benefits on February 11, 2010, alleging disability due to an injury of her lower back beginning October 1, 2008. Tr. 19, 21. Her applications were denied initially and on reconsideration, and she then requested a hearing. Tr. 19. After the hearing, the administrative law judge (ALJ) issued a written decision finding that Logston is not disabled. Tr. 19-20. Logston argues that the ALJ erred by not taking the testimony of a vocational expert to determine that Logston was not disabled. Because the Commissioner's decision was based on proper legal standards and was supported by substantial evidence, the Commissioner's decision is AFFIRMED.

1 – OPINION AND ORDER

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, we review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration (SSA) utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520.

At step one, the SSA considers whether the claimant is currently engaged in substantial gainful activity; if she is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4). At step two, the SSA considers the medical severity of the claimant's impairment. *Id.* The agency will find the claimant not disabled if the impairment is not severe enough. *Id.* At step three, the claimant will be found disabled if the claimant's impairment is of sufficient duration and if it meets or equals a list of impairments. *Id.* If the impairment does not meet these requirements, the claimant's residual functional capacity (RFC) is determined. *Id.* The claimant's RFC is an assessment of the greatest level of work that she can do based on an analysis of the effects of all limitations evident in her record on the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(1). At step four, the SSA looks at the claimant's past work and RFC, and if the claimant is able to do her past work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4).

At step five, it is the Commissioner's burden to demonstrate that although the claimant is unable to do past relevant work she is capable of making an adjustment to other work. *Id.* To make that determination, the SSA considers the claimant's vocational factors: her RFC, age, education, and work experience. *Id.* If the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). To assist the uniformity and efficiency of the ALJ's step five decisions, the SSA established the Medical-Vocational Guidelines (Guidelines). *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The Guidelines are a matrix of the four factors and "set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983)).

3 – OPINION AND ORDER

The ALJ found at step one that Logston had not engaged in substantial gainful activity since the claimed disability onset date. Tr. 21. At step two, the ALJ found that Logston's "vertobrogenic disorder in the lumbar spine; cervicalgia; obesity; depressive disorder, not otherwise specified; generalized anxiety disorder; pain disorder; and personality disorder, not otherwise specified" qualified as severe impairments under the regulations. Tr. 21. At step three, the ALJ found that Logston's impairments did not meet or equal any listed impairment. Tr. 22. Between steps three and four, the ALJ found Logston had the RFC to perform sedentary work as defined by 20 CFR 404.1567(a) and 416.967(a). Tr. 23. At step four, the ALJ found that Logston could not perform her past relevant work because it required greater than a sedentary exertion level. Tr. 31. At step five, the ALJ found that Logston was not disabled because there were significant numbers of jobs in the national economy that she could perform. Tr. 31. To reach this conclusion, the ALJ considered the claimant's RFC, age, education, and work experience in conjunction with the Guidelines. Tr. 31. In addition, the ALJ looked at Logston's nonexertional limitations and determined that they would not significantly erode her sedentary job base. Tr. 32.

Logston asserts that the ALJ erred at the fifth step of the disability analysis by failing to consult a vocational expert (VE). Pl. Br. 2. Logston first argues that the ALJ erred by relying exclusively on the Guidelines, none of which exactly matched her combination of factors, to find that Logston was not disabled. Second, Logston argues that the ALJ erred in not properly considering her nonexertional limitations, which she contends severely limit the range of sedentary work she can perform. According to Logston, the testimony of a vocational expert is therefore required to determine whether a significant number of jobs exist.

I.  **Step Five Disability Analysis**

At step five, the Guidelines alone direct a conclusion of disabled or not disabled when the claimant has only exertional limitations and the rule's vocational factors exactly match those of the claimant. *Hoopai*, 499 F.3d at 1075. The ALJ may not rely exclusively on the Guidelines and must take the testimony of a VE "[w]hen the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988)). But, the fact that a claimant has a nonexertional limitation does not automatically preclude application of the grids. *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). The ALJ must first determine if a claimant's nonexertional limitations significantly limit the range of work permitted by his exertional limitations. *Id.*

The testimony of a vocational expert is required when a claimant's nonexertional limitation is "'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitation." *Hoopai*, 499 F.3d at 1076 (quoting *Burkhart*, 856 F.2d at 1340). When the nonexertional limitation is not sufficiently severe, the ALJ must use the Guidelines as a framework to determine whether the claimant can perform work that exists in significant numbers despite her nonexertional limitations. *Id.* at 1075 (citing Soc. Sec. Ruling 83-14).

A step-two finding that a nonexertional limitation is "severe" does not automatically require the ALJ to seek the assistance of a vocational expert. *Id.* at 1076. "[B]uilt into the step-five determination and the [Guidelines] is recognition that the claimant has met the threshold requirement for a severe disability at step two." *Id.* The step-two finding is not dispositive of a

"sufficiently severe" nonexertional limitation at step-five. *Id.* If it were, a VE would be required at every claimant's step five evaluation, which was clearly not the intent of the Guidelines. *Id.*

This Court does not agree that the ALJ mechanically applied the Guidelines to find that Logston was not disabled. The ALJ states that he used Medical-Vocational Rule 201.21 as a framework to determine if Logston was disabled. Tr. 32. Medical-Vocational Rule 201.21 provides a decision of not disabled for claimants with the following characteristics: an individual 45-49 years of age, with a high school graduate education, and who possesses non-transferable skills from a skilled or semi-skilled work background. Although the ALJ found that Logston's vocational profile did not exactly match any of the sedentary Medical-Vocational Rules because Logston had an unskilled work background, the ALJ chose to use this rule as a framework for his determination of Logston's disability status. Tr.32. The Commissioner points out that Rule 201.18 also provides a decision of not disabled for an individual of the same age, with less education than Logston, and the same unskilled work experience. Def. Br. at 6. Therefore, using the Guidelines as a framework for analyzing Logston's disability status would properly result in a determination of not disabled as long her nonexertional limitations were not severe enough to significantly erode her sedentary job base.

The ALJ's determination that Logston's nonexertional limitations would have little to no effect on her unskilled sedentary occupational base was based on proper legal standards and was supported by substantial evidence. He found that Logston could occasionally climb stairs and ramps, stoop, balance, crouch, crawl and kneel. Tr. 23. The ALJ also found that Logston should avoid concentrated exposure to extreme cold and heat; fumes; dust; gases; poor ventilation and other pulmonary irritants; hazardous machinery; and unprotected heights. Tr. 23-24. Additionally, he found that she had mild to moderate limitations in understanding and

6 – OPINION AND ORDER

remembering detailed instructions; maintaining attention and concentration for extended periods; and setting realistic goals or making plans independently of others. Tr. 24. Finally, the ALJ found that Logston had a moderate limitation in responding appropriately to changes in the work setting. Tr. 24.

The ALJ concluded that "[g]iven an individual with the same age, education, and work experience as the claimant in this case, the types of exertional and physical/mental non-exertional limitations present in the case at hand, [sic] would not significantly erode the job base at the sedentary level." Tr. 32. Logston's nonexertional limitations can be broken into three categories: postural-manipulative impairments, environmental restrictions, and mental impairments. First, Logston was found to be able to occasionally climb stairs and ramps, stoop, balance, crouch, crawl, and kneel. Tr. 23. The ALJ was correct in determining that none of these would erode her occupational base because they are not required more than occasionally in sedentary work. *See* Soc. Sec. Ruling 85-15. Second, Logston's environmental restrictions to avoid concentrated exposure of heat, cold, fumes, dust, gases, poor ventilation, machinery, and heights were also correctly found to not have a significant effect on her sedentary work base. *See id.*

Third, the ALJ was correct in finding that Logston's mild to moderate and moderate mental nonexertional limitations were not severe enough to significantly erode her job base. Consequently, the testimony of a vocational expert was not required. Moderate mental nonexertional limitations do not mandate the testimony of a vocational expert because they do not per se limit the claimant's ability to do work beyond the exertional limitation. *Hoopai*, 499 F.3d at 1077. In *Hoopai*, a claimant with depression and a back injury limiting him to light work was found to have moderate limitations in his ability to maintain attention and concentration, to

maintain a schedule, to maintain regular attendance and punctuality, and to complete normal workdays and weeks without interruption from psychologically based symptoms of his depression. *Id.* at 1074, 1077. Despite these moderate nonexertional limitations, the Ninth Circuit affirmed the ALJ's decision finding the claimant was not disabled without the assistance of a vocational expert. *Id.* at 1077.

      The ALJ found that Logston had mild to moderate limitations in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, setting realistic goals or making plans independently of others, and moderate limitations in responding appropriately to changes in the work setting. Tr. 24. The ALJ was correct in finding that these mental limitations are not severe enough to significantly erode Logston's job base. This is true not only because the limitations are mild to moderate, but also because two of the three impacted abilities are expressly not required to perform unskilled sedentary work. *See* Soc. Sec. Ruling 85-15 (unskilled work requires ability to understand, carry out, and remember *simple* instructions and requires little or no judgment to do simple duties). Applying *Hoopai*, the ALJ's finding that Logston's moderate mental limitation in responding appropriately to changes in the work setting would not significantly erode Logston's job base was based on proper legal standards.

      The ALJ also had substantial evidence to conclude that Logston's nonexertional limitations were not severe enough to significantly erode her occupational base, so he did not need the testimony of a vocational expert. In Dr. Bagner's report from his complete psychiatric evaluation of Logston, he stated that "[s]he would have mild limitations maintaining concentration and attention and completing complex tasks," and "[s]he would have mild to moderate limitations handling normal stresses at work and completing a normal workweek

8 – OPINION AND ORDER

without interruption." Tr. 508. Additionally, he believed that Logston would improve significantly and quickly if she received psychiatric treatment for her depression. Tr. 508. After Dr. Edwin's psychological evaluation of Logston, he stated that she would have mild and moderate limitations in a workplace. Tr. 669. At the hearing, mental health medical expert Dr. Moore testified that after reviewing the evaluations of Logston's mental limitations, she believed Logston was capable of full-time work activity on a regular and consistent basis. Tr. 46-48. Also after a review of Logston's record, Dr. Amado determined that despite the mild and moderate mental nonexertional limitations, Logston was "not precluded from unskilled work activity." Tr. 522. The ALJ had substantial evidence to determine that Logston's nonexertional limitations were not sufficiently severe to significantly limit Logston's sedentary work base. As a result, the ALJ was not required to seek the assistance of a vocational expert. The ALJ properly used the Guidelines as a framework in determining that there were significant numbers of sedentary jobs that Logston could perform.

## CONCLUSION

The ALJ's finding that Logston was not disabled was based on proper legal standards and was supported by substantial evidence in the record. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 1 day of December, 2015.

Michael McShane
United States District Judge